# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | |
| | : | |
| v. | : | No. 449 C.D. 2024 |
| | : | |
| William Towne, | : | |
| Appellant | : | Argued: May 7, 2025 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                                                                      FILED: March 13, 2026

William Towne (Towne) appeals the March 28, 2024 order of the Court of Common Pleas of Allegheny County (trial court). The trial court concluded that the Pennsylvania Election Code (Election Code)[1] prevents Towne from using the Right-to-Know Law (RTKL)[2] to access voted absentee and mail-in ballots from the 2022 primary election. The trial court thus reversed in part a determination of the Office of Open Records (OOR) that had granted Towne's request for those ballots. After review, we conclude that the Election Code designates voted absentee

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.
[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

and mail-in ballots as public records which are available through the RTKL, as established by our decision in *Previte v. Erie County*, 320 A.3d 908 (Pa. Cmwlth. 2024) (en banc). Accordingly, we reverse in part the trial court's order.

## I. BACKGROUND

Towne is a qualified and registered elector of Allegheny County. On July 20, 2022, Towne submitted a RTKL request (Request) to the County seeking "all official mail-in and absentee ballots cast in the 2022 primary election(s), including certified County scans and access to original records including the right to photograph or photocopy original records . . . ." Reproduced Record (R.R.) at 657a. The Request specified that "the ballots being sought are labeled as official ballots and . . . not limited to sample ballots used to demonstrate the content of a ballot before an election." *Id.* The request cited Sections 1307-D(a) and 1309(a) of the Election Code, which provide, respectively:

> (a) **General rule.**--All *official mail-in ballots*, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists *are designated and declared to be public records* and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3150.17 (emphasis added).

> (a) All *official absentee ballots*, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists *are hereby designated and declared to be public records* and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense

2

because of military security.

*Id.* § 3146.9 (emphasis added).

The County invoked its right under the RTKL for extra time to review the request on July 27, 2022, and denied the request on August 26, 2022.  The County asserted the following reasoning for the denial:

> Section 3101.1 of the RTKL[, 65 P.S. § 67.3101.1,] states that if the provisions of the RTKL regarding access to records conflict with any other Federal or State law, then the provisions of the RTKL shall not apply. In this case, the [Election Code,] at Section 308,[3] controls access to, and the right to inspect, certain documents.  Your request is for records that are governed by the Election Code, so you must direct your request to the Allegheny County Elections Division, in accordance with Section 308 of the Election Code.

---

[3] Section 308 of the Election Code states:

> The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, *except the contents of ballot boxes and voting machines and records of assisted voters, shall be open to public inspection*, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added).

R.R. at 659a. Towne timely appealed to the OOR.

Before the OOR, the County reiterated its position that the requested records are not subject to the RTKL, but are instead governed by the Election Code. R.R. at 661a. The County also took the position that mail-in and absentee ballots are "the contents of ballot boxes," which are explicitly not subject to public inspection per Section 308 of the Election Code. *Id.*

On September 28, 2022, the OOR issued a final determination sustaining in part Towne's appeal. R.R. at 660a-67a. The OOR ordered the County "to make mail-in and absentee ballots responsive to the Request available for access in accordance with the Election Code." *Id.* at 667a. The OOR reasoned that the requested ballots are public records pursuant to the Election Code. The OOR declined Towne's request to find the County had acted in bad faith in denying the Request. *Id.* at 666a-67a.

The parties each appealed the OOR's determination to the trial court, which held a two-day *de novo* hearing.[4] Two County officials testified. David Voye, Manager of the County's Elections Division, explained that he received guidance from the Secretary of the Commonwealth (Secretary) and Pennsylvania Department of State (Department) that voted ballots are not disclosable because once voted, they become the contents of ballot boxes and are thus exempt from disclosure under the Election Code. R.R. at 436a-41a. He opined that the phrase "official [mail-in or absentee] ballots," which are public records, refers only to printed form ballots that have not yet been voted or marked, which is not what the Request seeks. *Id.* at 443a, 472a-74a. Jessica Garofolo, Director of the County's Department of Administrative Services and its Open Records Officer, testified that she denied the

---

[4] The trial court acted as ultimate factfinder at the *de novo* hearing. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

Request on the advice of Voye and the County's Solicitor, relying on the Solicitor's advice about what the Election Code and the RTKL require, since she is not an attorney. *Id.* at 199a.

On March 28, 2024, the trial court reversed in part and affirmed in part the OOR's determination. The trial court first reversed the OOR's granting of the Request, concluding that the requested records are not "official . . . ballots" under Sections 1307-D(a) and 1309(a) of the Election Code, and are "contents of ballot boxes" not subject to disclosure. The trial court reasoned, in relevant part:

> Here, the term "official mail-in ballot," does not refer to the ballot after it is marked, and subsequently sent back and returned to the county board of elections to be computed and canvassed. When referencing the process by which the voted ballot must be returned to the county, the ballot is merely referenced by the [Election Code] as being the "mail-in ballot," not the "official mail-in ballot."

> When reviewing an agency's decision to deny public access to a particular requested record, courts are to defer to the agency's own interpretation of the statute guiding their decision to grant or deny access to that record . . . .

> In his testimony, [Voye] stated that his interpretation of the meaning "official mail-in ballot" [sic] is derived from 25 P.S. §3150.13 and understands [sic] the section's use of the term "official mail-in ballot" to refer to the ballots "prepared and stamped in accordance with the Election Code" prior to distribution of those ballots to voters. He does not "understand the term 'official mail-in ballot,' listed as one of the types of records declared to be public under 25 P.S. §3150.1.7, 'to refer to a cast, or voted, ballot.'"

> 28 P.S. §2648 denies public access to "the contents of ballot boxes and voting machines." It would make no sense to prohibit access to those records, but grant access

5

to mailed, cast ballots. A reviewing court must presume "that the General Assembly does not intend a result that is absurd...or unreasonable." 1 Pa. C.S.[] §1922(1).

Trial Ct. Pa.R.A.P. 1925(a) Op. at 5-7 (pagination supplied) (some internal citations omitted). The trial court then affirmed the OOR's rejection of Towne's bad faith claim. The trial court reasoned that the County made a good-faith determination that the requested records were not presumed public because they were prohibited from disclosure under the Election Code. *Id.* at 8-9. The court also noted that the County did not deny the Request outright, but instead referred it to the County's Elections Division. *Id.* at 10. The trial court did not otherwise address any argument that the RTKL does not apply or that the OOR lacked jurisdiction over the Request.[5] Towne appealed to this Court.

## II. ISSUES

On appeal,[6] Towne argues that the trial court erred in concluding that the requested ballots are not public records obtainable through the RTKL. Towne also argues the trial court erred in finding no bad faith. The County raises an issue in the nature of a cross-appeal, arguing that because the Election Code preempts the RTKL, the RTKL is wholly inapplicable to the Request and the OOR lacked jurisdiction to order the County to provide the requested records.

---

[5] In its statutory appeal to the trial court, the County did not directly raise a distinct claim that the OOR lacked jurisdiction to make a determination. *See* R.R. at 6a-8a. But the County's denial of the Request did state its position that the RTKL was inapplicable. *See id.* at 659a.

[6] When a case under the RTKL reaches this Court from a court of the common pleas, our standard of review is limited to determining whether findings of fact are supported by substantial evidence, or whether the lower court committed an error of law or abuse of discretion in reaching its decision. *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011). The scope of our review is plenary. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1029 n.3 (Pa. Cmwlth. 2011).

## III. DISCUSSION

### A. Jurisdiction of OOR

As a threshold matter, we address the County's argument about which statute governs the Request. If the RTKL does not apply and the OOR lacked jurisdiction, that would provide a procedural reason to affirm the trial court on other grounds. The County argues that the Election Code supersedes or preempts the RTKL regarding the public nature of ballots. On that basis, the County claims Towne was required to direct the Request to the County's Elections Division, rather than to its open records officer, and that the OOR lacked jurisdiction to order the records released. In support, the County cites *Energy Transfer v. Friedman*, 265 A.3d 421 (Pa. 2021), where our Supreme Court held that a separate statute fully governed access to the requested records, to the exclusion of the RTKL and OOR jurisdiction. The County "acknowledges that this [C]ourt's recent decisions . . . established that voted mail-in and absentee ballots are public records that can be obtained through a RTKL request." County's Br. at 7 (citing *Previte*, 320 A.3d 908; *Allegheny Cnty. v. Van Bibber*[], (Pa. Cmwlth., No. 379-380 C.D. 2023, filed Dec. 17, 2024) (en banc), 2024 WL 5135011). However, the County claims those statements about the applicability of the RTKL are dicta. The Secretary and the Department, as amici curiae, align with the County on this issue and claim that our prior decisions in *Previte* and *Van Bibber* were based solely on the Election Code, not the RTKL.

Towne responds that even if other statutes beyond the RTKL—such as the Election Code—designate certain records as public or nonpublic, the OOR still has jurisdiction under the RTKL to interpret and apply those other statutes. In support, Towne first notes that the RTKL's definition of "public record" relies on

7

other "Federal or State law," in part, to determine what records can be requested under the RTKL. *See* Section 306 of the RTKL, 65 P.S. § 67.306. Based on that incorporation of other laws into the RTKL's framework, Towne cites our holding that "[t]he RTKL contemplates [the] OOR's interpretation of statutes other than the RTKL when evaluating the public nature of records. Otherwise, it would not define 'public record' in a way that implicates other laws." *Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823, 828 (Pa. Cmwlth. 2014).

Our Supreme Court has explained how the RTKL interacts with other statutes as follows:

> The RTKL contains two caveats related to how other laws impact its presumption that a record is public and, therefore, subject to public disclosure. These caveats concern the *nature* of a record and the *accessibility* of a record, which are distinct concepts.
>
> According to the first caveat, nothing in the RTKL "shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.306. Thus, where a federal or state law establishes a record as public, the record is not subject to a public record analysis under the RTKL. Given this significant consequence, a statute should be clear when it establishes the public nature of records. According to the second caveat, if the provisions of the RTKL "regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply." *Id.* § 67.3101.1. Thus, where a federal or state law prescribes *certain procedures* to access records in a manner that conflicts with the RTKL, the provisions of the other law prevail.

*Energy Transfer*, 265 A.3d at 429-30 (some citations, footnotes, and internal quotation marks omitted) (emphasis added). In *Energy Transfer*, the Court

8

considered the effect of the Public Utility Confidential Security Information Disclosure Protection Act[7] (CSI Act), which prohibits disclosure of certain confidential security information held by the government. The Court explained that the CSI Act also contains its own robust procedures governing accessibility of the records requested, which are separate from those of the RTKL, and include notice to the affected public utility, a written decision by the agency, and a 30-day period for appeal to, and *in camera* review by, this Court. *See Energy Transfer*, 265 A.3d at 428 (citing Section 2141.3 of the CSI Act, 35 P.S. § 2141.3). The Pennsylvania Public Utility Commission—the agency at issue there—had promulgated by regulation further procedures governing CSI requests. *Id.* at 432-33. Accordingly, the Supreme Court determined the General Assembly "intended for the RTKL to yield to the CSI Act," such that the OOR "lacked authority to apply the substantive or procedural provisions of the CSI Act." *Id.* at 433.

We are not persuaded by the County's and amici's argument that the Election Code overrides the RTKL's procedures like the CSI Act did in *Energy Transfer*. Unlike the CSI Act, the Election code does not provide any procedures for a records request beyond rudimentary public inspection and copying. There is no requirement in the Election Code for a written agency decision or appeal to a court of record. The RTKL guarantees those procedural rights as a matter of law. We distinguish *Energy Transfer* on that basis. We agree with Towne that, although the Election Code governs the public *nature* of the requested records, which the RTKL itself recognizes and incorporates, the RTKL still governs the *process* for accessing those records, which vests the OOR with jurisdiction over the request. *See Cnty. of Chester v. Houser* (Pa. Cmwlth., No. 449 C.D. 2025, filed Feb. 9, 2026),

---

[7] Act of Nov. 19, 2006, P.L. 1435, 35 P.S. §§ 2141.1–2141.6.

slip op. at 6 n.14, 2026 WL 346223;[8] *see also Van Bibber*, slip op. at 8 n.10 (Wallace, J., concurring) ("I am satisfied the [OOR] had jurisdiction in this case, given that the Election Code designates voted mail-in ballots as public records and supplies no detailed procedure for requesting access to ballots or for challenging the county election board's decision if it refuses to grant access").

## B. Merits of Request

Towne argues the requested ballots are public records for purposes of the RTKL because they are defined as public under the Election Code. Specifically, he claims that voted ballots are included within the meaning of the phrase "official [mail-in or absentee] ballots," which are designated as public records in Sections 1307-D(a) and 1309(a) of the Election Code. Towne relies in part on our decision in *Previte*, where we "conclude[d] that images of completed absentee and mail-in ballots are public records that can be obtained through an RTKL request." 320 A.3d 908, 917 (Pa. Cmwlth. 2024) (en banc). Towne argues the trial court erred in deferring to the County's contrary interpretation of the Code.

The County asks us to interpret the phrase "official . . . ballot" on which Towne relies as applying only to printed form ballots that are blank, not ballots already filled out or cast. The County cites several provisions of the Election Code that distinguish between voted ballots and "official" ballots, including Section 309, which refers to "all official ballots and the contents of ballot boxes" as two separate things. 25 P.S. § 2649. Amici share this position, arguing that the word "official" is distinct from voted, completed, or filled-in ballots, and though "official" is not defined in the Election Code, it unambiguously refers to unfilled ballots only. The County asks us to defer to the Department's interpretation of the Election Code. In

---

[8] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

addition to those statutory construction arguments, the County argues that disclosure of voted ballots may violate the right to voting secrecy under the Pennsylvania Constitution. *See* County's Br. at 28-30 (citing *Van Bibber*, slip op. at 2, 9 (Cohn Jubelirer, P.J., dissenting)). The County acknowledges that our decisions in *Previte* and *Van Bibber* addressed these issues, but argues the issues are not settled because those decisions are on appeal.[9]

Sections 1307-D(a) and 1309(a) of the Election Code designate "[a]ll official [mail-in and absentee] ballots" as "public records." 25 P.S. §§ 3150.17(a), 3146.9(a). In *Previte*, we construed this language as follows:

> The phrases "official absentee ballots" and "official mail-in ballots," which are of critical import in this matter, are neither defined in [Sections 1307-D and 1309] nor anywhere else in the broader Election Code. It is thus facially unclear whether these terms refer to completed ballots or uncompleted ballots. Even so, the meanings of each phrase is ultimately clear. All of the other items (applications, files, filled-out envelopes, lists, etc.) mentioned in Sections 1307-D(a) and 1309(a) refer to materials relating to the process that produces a completed ballot. It would be unreasonable to conclude that the General Assembly would have omitted those completed ballots themselves from this slate of covered materials. Furthermore, as both statutory provisions expressly restrict dissemination of identifying voter information, such concerns would not be present with regard to uncompleted ballots themselves, as such ballots obviously do not contain cast votes. Given this, the most logical reading of both "official absentee ballots" and "official mail-in ballots" is that these phrases refer to completed ballots, rather than those that are

---

[9] *See Previte*, *petition for allowance of appeal filed* (Pa., No. 230 WAL 2024); *Van Bibber*, *petition for allowance of appeal filed* (Pa., No. 5 WAL 2025). The Supreme Court has held those petitions for allowance of appeal pending its resolution of the appeal in *Honey v. Lycoming County Office of Voter Services*, 312 A.3d 942 (Pa. Cmwlth.) (en banc), *appeal granted*, 327 A.3d 611 (Pa. 2024, No. 79 MAP 2024).

11

uncompleted.

320 A.3d at 916 (footnote omitted). On that basis, we held that the requested records in *Previte*—images of completed mail-in and absentee ballots—were public records obtainable through the RTKL. *Id.* at 917. We are bound by that prior decision and will not reconsider it here. We disagree with the County's suggestion that the prospect of appeal in *Previte* alters its precedential value. *See Germantown Cab Co. v. Phila. Parking Auth.*, 27 A.3d 280, 283 (Pa. Cmwlth. 2011) ("[A] decision of an appellate court remains binding precedent, even if it has been appealed, unless and until it is overturned by the Pennsylvania Supreme Court.").

In addition to our reasoning in *Previte*, we agree with Towne that use of the phrase "official . . . ballots" throughout the Election Code shows that it includes marked and cast ballots, not just form ballots. For example, Section 1308(a) of the Election Code[10] states:

> The county boards of election, upon receipt of *official absentee ballots* in sealed official absentee ballot envelopes as provided under this article and mail-in ballots as in sealed official mail-in ballot envelopes as provided under Article XIII-D, shall safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections.

25 P.S. § 3146.8(a) (emphasis added). Section 1308(b) likewise refers to "envelopes containing official absentee ballots and mail-in ballots," with such ballots being "counted and recorded." *Id.* § 3146.8(b). Section 1308(g)(7) states: "[T]he votes cast upon the challenged official absentee ballots that have been finally determined to be valid shall be added to the other votes cast within the county." *Id.* § 3146.8(g)(7). These sections make sense only if the "official . . . ballots" discussed

---

[10] Added by the Act of March 6, 1951, P.L. 3, 25 P.S. § 3146.8(a).

12

are already filled out or cast. "[W]here the meaning of a word or phrase is clear when used in one section of a statute, it will be construed to have the same meaning in another section of the same statute." *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018). Thus, "official . . . ballots" includes voted ballots, as we held in *Previte*.

Finally, we are not persuaded by the County's argument that the Pennsylvania Constitution's voting secrecy provision[11] is implicated here. As we explained in *Previte* and again recently, in the rare cases where disclosure of ballots in unusually small precincts may threaten secrecy, the proper response is "to ask the finder-of-fact to deem those ballots as exempt from disclosure," rather than to deny the entire request outright. *Houser*, slip. op. at 7; *see also Previte*, 320 A.3d at 917 (requiring that requested ballots be provided "as long as they . . . do not include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots"). Here, like in *Houser*, the County "rested its ballot secrecy argument solely upon hypothetical concerns" and did not identify any specific information or circumstances that present a constitutional problem. *Houser*, slip op. at 8. Thus, those concerns do not prohibit disclosure.

For these reasons, the trial court erred in concluding that the requested records are not subject to public disclosure through the RTKL.

### C. Bad Faith

Towne argues that both the OOR and the trial court erred in rejecting his claim that the County denied the Request in bad faith. He cites the County's admission that it did not search for responsive records at the time of the Request, which he claims demonstrates a failure of the duty to conduct a good faith search for

---

[11] "All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved." PA. CONST. art. VII, § 4.

13

records. Towne also claims the County's asserted basis for denial was in bad faith because Voye relied on advice from the County's Solicitor regarding whether the records were public, and the guidance from the Secretary the County claimed to rely on had not been issued until after the denial.

The County points out that it denied the Request before we had decided *Previte* which clarified that requested ballots are public records. The County argues its consistent legal position—that the Election Code exempts voted ballots from disclosure—was reasonable at that time, so its denial was in good faith. The County acknowledges that the written guidance it cited from the Secretary was not issued until after the denial, but states that this guidance aligns with its position and was part of ongoing communication between counties and the Secretary in light of numerous OOR determinations on the subject. The County maintains that its denial was not founded on a refusal to search for records or on delay, but on considered advice from the County's Solicitor that the requested ballots were nonpublic.

Section 901 of the RTKL requires that "an agency shall make a good faith effort to determine if the record requested is a public record." 65 P.S. § 67.901. This imposes a duty on the open records officer to act with diligence through all stages of the request. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.,* 243 A.3d 19, 28 (Pa. 2020). The open records officer should retain oversight when referring requests to other appropriate persons within the agency, review the records personally for responsiveness when necessary, and not uncritically rely on the representations of others at the agency without inquiring into the basis for their determinations. *See id.* The clearest example of a breach of this duty is when the agency "refuse[s] to search for and produce documents based on the contention it would be too burdensome to do so." *Id.* (quoting *Dep't of Envtl. Prot. v. Legere,* 50

14

A.3d 260, 266 (Pa. Cmwlth. 2012)).

We agree with the County that it acted with reasonable diligence under the circumstances. This matter is thus distinguishable from *Uniontown Newspapers*. In that case, the request was for records that the open records officer should have reviewed before making a determination. 243 A.3d at 23. The open records officer concluded the records were nonpublic without ever reviewing them, and repeatedly delayed disclosure over several years, ultimately resulting in the loss of some of the requested documents. *Id.* at 27, 34. Our Supreme Court held that was bad faith, emphasizing that the open records officer had failed to act with diligence. *Id.* at 23, 28. Here, the record supports the trial court's determination that Garofolo, the County's open records officer, acted diligently. Garofolo consulted with Voye and the County's Solicitor and relied on the Solicitor's legal advice that the requested ballots were, as a matter of law, nonpublic. R.R. at 199. The County timely issued a denial. The fact that the County introduced later communications from the Secretary that align with its position does not create bad faith. In its denial, the County did not cite those communications, but relied on its legal position that the ballots were not available under the RTKL, given the Election Code's provisions. Because we had not decided *Previte*, where we "harmonize[d] these ostensibly contradictory parts of the Election Code," it was possible for the County to come to a contrary position in good faith at that time. 320 A.3d at 917. We will not fault the County for failing to perfectly forecast how we would resolve this issue, and we find no error in the trial court's rejection of Towne's bad faith claim.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the RTKL governs this dispute, that the trial court erred in determining that completed absentee and mail-in

15

ballots cannot be disclosed under the RTKL, and that the trial court did not err in denying Towne's claim for bad faith.  Accordingly, we reverse in part and affirm in part the trial court's order.

 

 

_____
MATTHEW S. WOLF, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Allegheny County              :
:
        v.             :   No. 449 C.D. 2024
:
William Towne,            :
          Appellant  :

# O R D E R

AND NOW, this 13th day of March 2026, the March 28, 2024 order of the Court of Common Pleas of Allegheny County (trial court) is REVERSED IN PART regarding the trial court's ruling that voted absentee and mail-in ballots are not public records that can be obtained through the Right-to-Know Law.[1]  The trial court's order is AFFIMRED IN PART regarding the trial court's determination that Allegheny County did not act in bad faith.

                               _____
                               MATTHEW S. WOLF, Judge

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.